Okay, do we have a council who are going to argue? Josh Berday on behalf of Plaintiff Appellant Lucy Parsons-Labs. Okay. Good morning, Your Honor. Stephen Collins for the City of Chicago Mayor's Office. Okay, you are in the 1st District Appellate Court, 2nd Division. With you today are three justices of that court, including myself, Terry Lavin, and my colleagues, Justice Cynthia Cobbs and Justice Aurelia Puchinski. What we've been doing in terms of the Zoom arguments is giving each side an uninterrupted 10-minute period of time to present their arguments and to sort of press our mute buttons and not ask any questions until you get through that 10-minute period of time. And we ask that the appellant reserve three to five minutes for rebuttal. And we are ready to hear from you. We've considered the briefs and we're ready to hear your arguments. So let's hear from Mr. Berday. Yes, Your Honor, and I'll reserve four minutes. Thank you. Josh Berday on behalf of Plaintiff Appellant Lucy Parsons-Labs. May it please the court. The city argues that every word on every plan involving security enjoys blanket secrecy under 7-1-V. They don't even claim, let alone prove, that everything in the plan, including even things like the table of contents or background info, quote, could reasonably be expected to jeopardize the effectiveness of the measures for the safety of the personnel who implement them or the public, end quote. So the question is, can a security plan be kept secret so long as there's a single piece of information in it that qualifies for the exemption? And for multiple independent reasons, it cannot. So one, the city asked the court to ignore the plain language of 7-1-V itself. As it says, plans can be withheld, quote, only to the extent and then continues on with the statutory language. And the city concedes that courts may not ignore statutory language or render statutory language meaningless, yet turns around and asks the court to do exactly that. So that's point number one, just the plain language of the exemption itself. Point number two is the plain language of Section 7-1, the parent language to all of the exemptions. As Section 7-1 states, when exempt information is present, quote, the public body may elect to redact the information that is exempt. The public body shall make the remaining information available, end quote. And the use of the word shall by the legislature indicates a mandatory obligation. That's been reiterated specifically in the FOIA context in multiple appellate cases, including by this court. So this is just a flat rejection of any argument that if a record contains a piece of exempt information, then the public body can just withhold the entire thing. That's point number two. Point number three is the Illinois Supreme Court has held that all exemptions must be narrowly construed in favor of disclosure. So as this court has noted in Kelly and other cases, in addition to the Supreme Court case law, even if the court was willing to ignore the only to the extent language and say that there was ambiguity, which there isn't any ambiguity, then the narrow construction rule dictates that any ambiguity would still have to be resolved in favor of disclosure. That's point number three. Point number four is this court does not allow absurd results and allowing public bodies to make entire security plans exempt wherever any piece of information qualified for an exemption just doesn't serve any purpose. And it would really allow for gamesmanship in its most obvious form. And the city offers no explanation for why the General Assembly supposedly wants that result. What this would mean was anytime the city wanted to hide anything like police misconduct or anything else, all they would have to do is tack on plans or security measures to cast a spell of secrecy over the information. And the only Supreme Court rejects that it's rejected the use of casting spells of secrecy. And exactly what the city argues for here. So those are the four fundamental points for how a blanket exemption does not apply. What does the city say in response? Well, basically, they say, don't pay attention to that language or that language doesn't mean what it says. It actually means something other than the plain language. And they go on in different approaches on that point. So I would point the court to one case in particular. There's a couple of different ones. But Kelly v. Kenilworth is one case I would point the court to. And the exemptions using that language only to the extent 7-1-V is not the only such exemption. So 7-1-D, for example, uses that same only to the extent that disclosure would. And then it continues on. And so in Kelly, the 1st District looked at that exact language and there they pointed out the only to the extent language. The 1st District explicitly held that the exemption, quote, does not itself permit blanket exemptions, end quote. The court emphasized the importance of the only to the extent language. It literally emboldened or italicized that language. And then after emphasizing that language, it immediately reiterated the language of Section 7-1, the use of the word shall indicating a mandatory obligation to disclose whatever is left after redaction. And it even noted the Heinrich case doing the exact same thing. So in other words, the exact same analysis that we've put forth here, the plain language of the exemption, the plain language of 7-1, the duty to redact and produce. And I believe I'm nearing the end of my time and I reserve time for rebuttal. So if there are, I will leave it there. And we would ask that this court reverse and remand with instructions to only redact the exempt information and the rest shall be produced. Thank you. I don't have any questions in particular. Why don't we hear from my colleagues? I have no questions. Well, I guess I'll throw a question or two out. I'm not sure this is particularly relevant, but was there any allegations? Have there been any lawsuits that the police improperly handled the expected demonstrations related to the Laquan McDonald verdict? Not that I'm aware of. And to be clear, we're not alleging that anything wrong was done here at all. It's not like the George Floyd protests, which were the subject of an article just the other day in the New York Times. Why isn't this sort of moot? Why does something involving a FOIA request on something that was handled properly merit this kind of scrutiny? Well, we've never alleged that there was any wrongdoing in the handling itself. The point is that the public gets to take a look and see for themselves what was done and what's in the report. And oftentimes just verifying for even if everything was done properly, the public verifying that has value and would bolster confidence in the government and the way things were handled. And then the times that things are uncovered that are different than what the government says, that obviously has value as well. So there's great value in the release of the records either way, whether it confirms that everything was done properly or otherwise. And there was a request for an in-camera inspection? Yes, there was. The circuit court did not perform any in-camera inspection at all, so there was no reason to. And you were okay with redactions, right? To the specific tactical information, yes. That they specifically addressed in their affidavit, yes. Okay, let's hear from Mr. Collins. May it please the court. The circuit court correctly decided that the action plan at issue here is exempt from disclosure. This morning, I will explain that the action plan comes squarely within FOIA's exemption for plans that are designed to protect public safety. I will also explain that contrary to plaintiff's argument, the entire action plan is exempt. But first, this action plan is exactly the kind of record that the FOIA exemption at issue here covers. This exemption, which I'll call Section 71V for short, applies to plans that are designed to protect the community. Moreover, the exemption uses that specific word, plans, when setting forth its scope. Now, this action plan is undoubtedly a plan to protect Chicago. It was created in advance of the verdict announcement in the Jason Van Dyke trial. Given uncertainty over the verdict and the public's response to it, there needed to be a plan to keep the city safe. To that end, this plan set forth the positioning of police officers. It described how to handle any emergency situations that might have arisen. It also identified potential hotspots where additional city resources might have been needed. So in all these ways, this is plainly a record that was designed to protect the city during what could have been a very dangerous time for Chicago. Moreover, Section 71V further provides that a record is exempt only to the extent that disclosure could reasonably be expected to jeopardize the efficacy of safety measures or put people in danger. This is a deferential standard. Properly understood, it means that where a public body reasonably believes that disclosure could undermine the efficacy of safety measures or endanger someone's personal safety, then the public may withhold that record. And here, the city's affidavits explain that the police department relies on action plans such as this one when it creates new plans to prepare for similar events in the future. Disclosing this plan would reveal sensitive tactical information about how the city deploys its resources to protect residents and businesses. That would undermine the efficacy of safety measures, it would endanger the safety of city personnel who are tasked with implementing these plans, and it would also endanger the safety of city residents. Now, in the circuit court, plaintiff took the position that Section 71B just does not apply to this action plan whatsoever. But plaintiff has since abandoned that position. Now, plaintiff says instead that certain portions or passages of the action plan might not be exempt. But the statute does not support that argument. Rather, by its plain language, Section 71B exempts plans. That means that where is here, the public body has established that the record at issue is the type of plan that Section 71B exempts, then the entire plan is therefore exempt. Moreover, there is no factual basis for plaintiff's argument either. They asked for this specific plan. There is nothing in the record at issue apart from or in addition to this action plan. That means that the record is in its entirety a plan to protect public safety. The entire plan is therefore exempt. For these reasons, the judgment of the circuit court should be affirmed, and I'm happy to answer any questions the court might have. None for me. So the title of the plan, for example, that wouldn't be exempt. No, Your Honor. Our position is that the entire plan, every word, part of it is exempt because it is in its entirety a plan to protect public safety. I can see where parts of the index would be exempt, but I can see where parts of the index might not be exempt. Your Honor, I respectfully disagree on that because by its plain language, the statute exempts plans. Moreover, where the General Assembly has wanted to specify that only portions of an otherwise exempt record are exempt, it has done so using express language. And here I'm referring to the Section 7.1.F exemption, which generally provides that preliminary drafts are exempt from disclosure, but that any portions of the draft that have been publicly cited and identified are not exempt. And Section 7.1.B just doesn't contain any comparable language. Moreover, the statute just doesn't give any guidance to courts as to what portions of a plan could be disclosed without potentially jeopardizing the efficacy of safety measures or putting someone's personal safety at risk. Courts, unlike police departments, lack specialized training in security measures, and it would put an unfair burden on them to expect them to decide on their own what portions of an otherwise exempt plan could potentially be released without potentially having these negative effects. So for all these reasons, the entire plan is exempt. So what is your position with, you just said that the statute doesn't give any guidance. But in point of fact, the last sentence in that Section 7.1.B gives you an example of the kinds of information that you may exclude. So it does give you and the courts some direction with respect to the kinds of information in a plan that may be parsed from the plan in its entirety and not be disclosed. So the provision itself seems to or reads as though it would allow some parsing out of the plan. Even if after parsing, nothing remains to be disclosed. Well, Your Honor, a couple points. One is that that last sentence of Section 7.1.B is not an exhaustive list because it by its terms, it provides that exempt items may include the examples that are given. Furthermore, that last sentence is properly understood is just emphasizing the type of record that is properly exempt under the statute. I don't believe that the language is intended to be exclusive as much as it's intended to give you an example of the kinds of things that, and it uses the word may be exempt from disclosure. My point is that the provision as written appears to allow a parsing out of portions of the plan, as opposed to your position, which states the entire plan is exempt under this section. Clearly the language in that section itself is contrary to the position you take here today. Your Honor, respectfully, our position is that the best way to give effect to that last sentence in Section 7.1.B, as well as the first sentence, which refers to entire plans, is to read those together. And that the last sentence provides clarity or further information over the types of plans that are properly exempt under the statute. And here the city's affidavits explain that this action plan, which is a unified document that contains no information that is extraneous to the plan to protect public safety. It contains exactly the kinds of information that this second sentence of the statute lists as examples, illustrative examples. I would suggest to you that I am reading the entire provision together as a general construct of statutory construction. I do not see the word entire preceding the word plans. That's correct, Your Honor. It just says plan. Yes. Okay, let's hear from Mr. Burdett. Yes, thank you, Your Honor. I would just quickly note a couple of points. We didn't hear a lot of engagement with Section 7.1, the language of Section 7.1. We didn't really hear a response to the Kelly v. Kenilworth case supporting our position. We didn't really hear... Was that in your brief? I believe we cited it at one point. I don't know that we went into it in great depth in the brief. I think that was my case. I looked at your brief and I didn't see it. I didn't see it either. No. Anyway, go ahead. Understood. I'm just taking one quick look, Your Honor. I don't have your reply brief in front of me. Maybe it was in there. Yeah, so I'm seeing it in the reply brief. At least one site to it came up. I'll continue on. Their argument regarding... We heard that reference to 7.1.F would render a number of exemptions in the FOIA statute to be just per se blanket exemptions if their position was accepted. And we've explored some of the ways that that 7.1.F argument that they put forth in a CERB reply brief is pretty thin. Another case that shows how thin that can be is the Calvin B. City of Chicago case, where somewhat similarly, the city there argued that a slight change in language resulted in a massive change in the outcome of the exemption. And the court there basically just walked through it and said the fact that the language is slightly different on this phrase related to as compared with information concerning doesn't mean that the General Assembly had any intention to rewrite the whole meaning of the statute. And they walked through that in more detail than what I'm covering now. And as the court pointed out there, if the General Assembly intended that to be a sweeping change to the statute, then it shows, quote, a very opaque and convoluted method of doing so, end quote. And the court reiterated some of the basic points that we've made here, such as even if there was ambiguity in the statute, which there isn't, FOIA requires ambiguity to be resolved in favor of disclosure. And I would just echo one of the points that Your Honor made about we've never argued that the list in 7-1-V is an exhaustive list by any means necessarily. It's just a list of examples, and there is the duty both in the exemption itself and the parent language of Section 7-1 to redact exempt information, produce the rest. And for all the reasons we've discussed, we would ask that the court reverse and remand with instructions to redact only exempt information and produce the rest. Thank you very much. Thank you for your briefs and argument, very professionally done as always, and we will take the matter under advisement and come back with an opinion in due course. We are adjourned.